# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| MERISOL VILLAGES, | § | **CHAPTER 11 CASE** |
| LLC, | § | |
|     DEBTOR. | § | **CASE NO. 22-20135-cag** |
| | § | |
| | § | |
| MERISOL VILLAGES, | § | |
| LLC & CHARLES L. | § | |
| CASTOR, JR.. | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | **ADVERSARY NO.** |
| | § | |
| SICO, HOELSCHER, HARRIS | § | |
| BRAUGH LLP N/K/A SICO, | § | |
| HOELSCHER & HARRIS, LLP, | § | |
| BRANTLEY WHITE, ROGER S. | § | |
| BRAUGH, JR., DAVIS, | § | |
| HUTCHINSON & WILKERSON, | § | |
| LLP & CAREY P. LOCKE, | § | |
| *Defendants*, | | |

Original Complaint

## <u>ORIGINAL COMPLAINT AND REQUEST FOR</u> <u>DECLARATORY JUDGMENT</u>

TO THE HONORABLE D A V I D R. J O N E S, CHIEF UNITED STATES BANKRUPTCY JUDGE:

NOW COME **Merisol Villages, LLC and Charles L. Castor, Jr.**, (respectively, "<u>Merisol</u>" and "<u>Castor</u>," and collectively, "<u>Plaintiffs</u>") and pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure file this Original Complaint and Request for Declaratory Judgment complaining of Defendants in the above styled adversary, and would show the Court as follows:

### I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue for this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a proceeding to determine the estate's interest in certain property and for damages and is a core proceeding pursuant to 28 U.S.C. §§ 157(b) (2) (A), (H) and (O).

### II. PARTIES

2.      Merisol Villages, LLC is the Debtor referenced in the above styled bankruptcy case. Merisol filed its voluntary chapter 11 petition on May 31, 2022. Merisol maintains its principal office in Port Aransas, Nueces County, Texas.

3.      Charles L. Castor, Jr. is the principal and sole member of Merisol and resides in Port Aransas, Nueces County, Texas.

4.      Defendant, Sico Hoelscher & Harris LLP, a/k/a and d/b/a Sico Hoelscher Harris & Braugh, LLP ("SHHB") is a Texas Limited Liability Partnership with its principal offices in Corpus Christi, Nueces County, Texas and may be served with summons directed to Craig Sico, Jason Hoelscher, or David Harris at 802 N. Carancahua, Ste. 900, Corpus Christi, Texas 78401.

5.      Defendant, Roger S. Braugh, Jr. ("Braugh") is an individual and an attorney residing in Corpus Christi, Nueces County, Texas and may be served personally at 802 N.

Carancahua, Ste. 900, Corpus Christi, Texas.

6.     Defendant, Davis, Hutchinson & Wilkerson, LLP ("DHW") is a Texas Limited Liability Partnership with its principal offices in Corpus Christi, Nueces County, Texas and may be served with summons directed to Martin C. Davis, Susan E. Hutchinson, and/or Marshall R. Wilkerson at 802 N. Carancahua, Ste. 1500, Corpus Christi, Texas 78401.

7.     Defendant, Cary P. Locke ("Locke") is an individual and an attorney residing in Corpus Christi, Nueces County, Texas and may be personally served with summons at 802 N. Carancahua, Ste. 1500, Corpus Christi, Texas 78401.

### III. GENERAL BACKGROUND AND FACTS

8.     Castor is a real estate developer in Port Aransas, Texas. Castor became embroiled in a dispute over a real estate venture with business associates Craig J. Millard and Revesser, LLC (collectively, "Revesser").

9.     Castor and SHHB established an attorney-client relationship wherein SHHB to represent him in litigation against Revesser. SHHB, through its partner Brantley White ("White") filed Cause No. 2013-CVV-61792-4, *Charles Castor, Jr. v. Craig J. Millard, et al,* County Court at Law # 4, Nueces County, Texas ("the Litigation").

10.     Castor and SHHB discussed a contingent fee arrangement, however, Castor does not recall whether or not he ever signed such an agreement and believes he was never provided with a final agreement, if any.

11.     White performed all of the services in connection with the Litigation and exclusively conducted all client communications with Castor. No other member of SHHB had any substantive role in the representation of or communication with Castor.

12.     On or before May 25, 2016, the parties' claims in the Litigation were mediated. At that time, as Castor was considering a complex offer to convey interests in land and various contractual and real property rights concerning the land in exchange for his release of his clims

in the Litigation. Naturally, Castor requested to know how the contingent fee would be calculated and what amount of money or property or other consideration for the release was to be shared between SHHB and Castor. In response, White affirmatively represented to Castor that SHHB would accept liquidated to the sum of $200,000.00 as a fee.

13.     Castor relied on White's representation concerning SHHB's fees and accepted the proposed settlement in reliance upon that representation. Castor would not have entered into any agreement at that time but for the representations of White.

14.     On May 25, 2016, a formal settlement agreement was entered into, attached as Exhibit 1 ("Settlement Agreement").

15.     Castor contends that any fee interest should be limited to $200,000.00 as a result of his reliance on White's representations concerning the fees payable from the settlement proceeds.

16.     Per the Settlement Agreement, Revesser would transfer certain sections of land out of a 256 acre tract owned by Revesser. The land owned by Revesser was oceanfront development property with highway frontage, located on the beach in Port Aransas, Texas.

17.     Per the Settlement Agreement, Castor recovered fee simple title to certain real property described therein in Exhibits to the Settlement Agreement (the "Recovered Property"). The Recovered Property is visually identified by color and is labeled, as follows. The Recovered Property to be conveyed in *fee simple* is described therein as 1) the pink-colored land shown in Exhibit A to the Settlement Agreement labeled as A-1 and 2) the blue-colored land shown in Exhibit A to the Settlement Agreement labeled as A2. In addition, the Recovered Property includes 3) a 50% interest in the undeveloped land and developed lots on "Block 10", subject to survey and partition upon certain conditions subsequent and per certain stated requirements necessary to development; 4) mutual grants of ingress and egress to "Block 8" in the event that Revesser connects its land on Block 8 with Castor's portion of Block 8; 5) the pink-colored land

shown in Exhibit A to the Settlement Agreement labeled as A5, being future bridge access connecting Block 8 to Block 10, subject to various reciprocal contractual obligations between Castor and Revesser; 6) subject to a condition subsequent, the land on Block 8 shown in Exhibit AA and labeled A6; 7) A five-year option to purchase the land owned by Revesser in Block 10 for $650,000.00 which, if not exercised, gave Castor the right to receive a pro-rata share of off-site utility costs necessary to development of Castor's properties; 8) a right of first refusal on the "triangle" of land colored blue on Exhibit AA; and 9) a 50' strip of land parallel to Castor's land on Blocks 8 and 10, colored pink and labeled A3.

18.     Subsequently, Castor conveyed his interest in the Recovered Property to Merisol.

19.     Of the Recovered Property, a 30.49-acre tract which Castor was to be deeded in fee simple had been surveyed as of May 13, 2016. Also, Block 10, out of which Castor was to receive a fifty percent undivided interest, had been surveyed.

20.     The two tracts to be conveyed in fee simple consist of a 25.559-acre tract ("Tract A") and a 4.935-acre tract ("Tract B"), totaling 30.49 acres.  Block 10 consisted of a 14.95-acre tract ("Tract C"), of which Castor would receive an undivided fifty-percent interest.

21.     Under a contingent fee agreement, SHHB would be entitled to an undivided interest in the land within the Recovered Property, but not a divided interest, and with no more or less contractual rights than were also held by Castor unless otherwise specifically provided. Dividing contractual rights within the Recovered Property, such as options to purchase land, was foreseeable, if more difficult to divide than land or cash.

22.     SHHB had a legal duty of clarity and a fiduciary duty to Castor when it was contracting with Castor. But any contingent fee agreement would need to provide for the method to divide options or other intangible contractual rights, such as by appraisal of any such rights for purpose of a fair and equitable division. And no such appraisal was ever made in order to determining a reasonable fee to be earned upon recovery of such intangible rights.

23.     On three occasions, a "contingent fee" was accepted as a reasonable fee by Castor. But on none of these occasions was it truly the end of the discussion. Instead, Defendants continued to "retrade" the deals they made and repudiated.

24.     First, SHHB and Braugh repudiated White's representation of a $200,000.00 fee. Braugh claimed incorrectly that White had no authority to make the agreement to take a $200,000.00 fee, becoming irate and abusive in the process.  He repudiated the agreement made between SHHB and Castor. Brantley White then ceased to be associated with SHHB shortly thereafter.

25.     Next, Braugh and SHHB demanded a liquidated fee $700,000.00 as a "33%" contingent fee, apparently valuing the recovery at about $2.1 Million.

26.     When a check for $700,000.00 was not forthcoming within Braugh's arbitrary timeframe, Braugh demanded a deed to SHHB and Locke for an undivided thirty-three percent (33%) of Tracts A, B and C.

27.     When Braugh determined that the thirty-three percent (33%) undivided interest in Tracts A, B, and C was inadequate, Braugh embarked on a self-dealing scheme of unconscionable and illegal conduct and transactions that would allow SHHB and Locke to take for themselves every single benefit that Castor received in the Settlement Agreement, and every opportunity that could ever accrue to the owner of the Recovered Property along with it.

28.     On August 19th, 2016, Castor executed a deed drafted by SHHB, Braugh, DHW, and Locke conveying what was represented to be the extent of the contingent fee earned, being an undivided twenty-eight percent (28%) interest in 30.49 acres of land to SHHB, and an undivided five-percent (5%) interest in the same land to Locke. A thirty-three percent, undivided interest in the land. Defendants presented a deed for this "fee" and it was signed by Castor while bitterly complaining of the prior representations and repudiations concerning fees.

29.     Subsequently, between August 19th, 2016 and July, 2019, Defendants, and

particularly Braugh, devised, and entered into a series of business transactions (collectively, the "Transactions") with Castor. At the time of the Transactions, Defendants were each acting in the capacity as lawyers representing Castor.  However, it appears they were not serving Castor as their master, but only themselves.

30.     The Transactions and the conduct of Defendants are governed by the Texas Disciplinary Rules of Professional Conduct.

31.     The conduct of the Defendants in connection with the Transactions amounts to extremely serious violations of fiduciary duties and fraud and deceit, and theft.

32.     The Transactions were orchestrated, intended and used by the Defendants for the purpose of taking Plaintiffs' interest in the by interfering with their ability to borrow against, develop, sell, and raise any revenue from the Property in order to force Plaintiffs into a position from which Defendants could take all of the Property for themselves for a fraction of its value, leaving Castor with nothing. The machinations that led to the Transactions are as follows.

33.     Despite having already received a deed three years earlier from Castor conveying the entirety of any possible contingent fee to which SHHB could possibly be entitled, in July, 2019, Defendants presented several documents for Castor to execute (the "Transactional Documents") that grossly altered and increased the fee already received and accepted in 2016.

34.     The Transactional Documents created a structure for a "contingent fee" that does not remotely resemble the undivided interest which had been previously conveyed to SHHB and Locke. The structure was devised carefully and intentionally to give SHHB and Locke an unconscionable advantage over Plaintiffs and to take for SHHB and Locke all advantages that had accrued to Castor and Merisol.

35.     At the time they presented and secured execution of the Transactional Documents, each of the Defendants committed plain violations of Rules 1.03(b), 1.04(a), 1.06(a) (1) & (2), 1.08 (a)(1), (2) & (3) and 1.08(b), and 8.04(a)(1) & (3), Tex. Disc. R. Prof'l.

Cond. when they 1) failed to disclose that they and their firms' interests were materially adverse to Castor's and adversely limited by their interests, and that representation was categorically prohibited in connection with the Transactional Documents, in violation of Rule 1.06(a)(1) & (2); 2) did not provide Castor with an opportunity to consult independent counsel in a transaction so complex that independent counsel was required by Rule 1.08(b); 3) failed to make the disclosure required by Rule 1.08(a)(1) in a manner which could be reasonably understood by Castor, a disclosure which could only be made by independent counsel, as set forth *infra*); 4) proposed terms that no reasonable lawyer could consider to be "fair and reasonable" to Castor, in violation of Rule 1.08(a)(1); 5) failed to secure Castor's informed, written consent as required by Rules 1.08(a)(3); 6) contracted for an unconscionable fee in violation of Rule 1.04(a); 7) engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.04(a)(3); and 8) failed explain the Transactional Documents to the extent reasonably necessary to permit Castor to make informed decisions, in violation of Rule 1.03(b).

36.     Instead of complying with their professional responsibilities to Castor, they masqueraded as Castor's *own* counsel while representing solely the interests of themselves and their firms.

37.     Under no circumstances could any reasonable lawyer consider that the Transactional Documents presented a proposal that was "fair and reasonable" to Castor because they resulted in a substantial and detrimental change in the amount and the structure of the "contingent fee" previously paid, and resulted in Castor's surrender to SHHB and Locke of near-total control over his use and development of the Property, and an unconscionable and illegal fee in violation of Rule 1.04, Tex. Disc. R. Prof'l. Cond.

38.     Their involvement with Castor and advice to execute the Transactional Documents to their client was absolutely prohibited by Rule 1.06(b)(1) & (2) to begin with

because their, and their firms' interests were materially and directly adverse to the interests of Castor, and because it was obvious that such interests reflected in the Transactional Documents adversely limited their ability or will to live up to their responsibility to Castor. Under the "disinterested lawyer" test, each of the Defendants was prohibited from even seeking a waiver of any conflict of interest from Castor, much less proposing the terms contained in the Transactional Documents to Castor. But even had they sought such a waiver, and even assuming for sake of argument that the conflict of interest was of a type that could be disclosed and waived, there was no disclosure of the conflict of interest at all, there was no disclosure in writing as is required as a matter of law, and there was no opportunity nor recommendation given to secure independent counsel's review and advice.

39.     Two of the documents presented to Castor in July, 2019 were "Exchange Deeds" drafted by Locke and DHW at Braugh's and SHHB's request and instruction. In the Exchange Deeds, SHHB, and Locke caused their extant undivided fee interest, conveyed in 2016, and Castor's remaining undivided interest in Tracts A, B and C, to become divided interests. The Exchange Deeds provide that Castor will have an undivided 100% interest in Tract A (25.59 acres) and that SHHB and Locke will jointly own 100% of Tract B (4.935 acres). The Exchange Deeds also provide that Castor conveys all of his 50% divided interest in Tract C (14.59 acres) to SHHB and Locke. This left Castor with no control or use over Tract B or Tract C and prevented Plaintiffs from being able to develop Tract A due to access issues that SHHB and Locke have created by their scheme. While SHHB and Locke have proposed an easement access, construction of the ingress will be at a substantial cost to Castor that cannot be raised without either a loan or by selling developed lots out of Tract A, and as seen below, SHHB and Locke have made that impossible through their scheme. The "Exchange Deeds" are attached as Exhibits 2 and 3.

40.     Another of the Transactional Documents presented in July 2019 is a Conditional

Option Agreement ("Conditional Option") permitting SHHB and Locke to purchase Castor's only remaining property, Tract A. It is utterly unconscionable and vastly in excess the "contingent fee" already paid. It provides that Castor intends to secure a loan against his undivided 100% interest in Tract A and to use Tract A as collateral for the loan. It then provides that if Castor should default on any such loan, that SHHB and Locke can purchase Tract A for the amount of the loan. The Conditional Option is attached as "Exhibit 4." Castor did secure a loan and, of course, needed to be able to sell developed lots out of Tract A to generate the revenue to pay the loan. In order to get that loan, the lender required SHHB and Locke to subordinate their Conditional Option rights to the lender's interest. SHHB and Locke did so because to do otherwise would constitute a serious act of misconduct. But then, they regretted it. And from then on, they decided that by refusing to do so every time a developed lot out of Tract A could be sold by Castor, they could "squeeze" Plaintiffs by preventing the sale, and thus the revenue necessary to repay the loan, forcing Plaintiffs into default. And upon default, they could purchase Tract A for the balance of the loan, thus enriching themselves at the expense of their client. That is precisely what they have done.

41.     Another of the Transactional Documents presented to Castor in July, 2019 is an option permitting Castor to purchase SHHB's and Locke's interest in Tract B and Tract C for $1,100,000.00 on or before July 1, 2022.

42.     After all of these Transactional Documents were presented to Castor, Castor paid Carey Locke the sum of $10,000.00 for his services to Castor, because Locke had represented to Castor that Locke was Castor's attorney.

43.     On November 26, 2019, Castor transferred his interest in the Recovered Property to Merisol by Assumption Warranty Deed.

44.     On numerous occasions since they extracted the Exchange Deeds and Conditional Option through their professional misconduct, Defendants have refused to release

or subordinate the Conditional Option and thus prevented Plaintiffs from having any benefit from ownership of Tract A, as was planned from the inception of the self-dealing scheme.

45.     Defendants prevented Plaintiffs from selling developed lots which have ready, willing and able purchasers to buy, representing sales for millions of dollars and more than enough to retire the small loan secured by Tract A. As a result, Plaintiffs have been unable to sell 10 developed lots for approximately $2,000,000.00, and have been prevented from developing additional lots worth approximately $19,000,000.00. Defendants had failed to counsel their client that the Conditional Option could or would work that way.

46.     On April 7, 2022, Plaintiffs gave notice of intent to exercise their option to purchase SHHB's and Locke's interest in Tracts B and C for $1,100,000.00. But on April 11, 2022 Defendants, in lockstep with the self-dealing scheme, refused to subordinate the Conditional Option to permit Plaintiffs to secure a loan to pay the option price, destroying his ability to exercise the option. Defendants had failed to let their client know that the conditional option would or could work that way.

47.     But for the Exchange Deeds and the Conditional Option, coupled with the fraud and deceit practiced by each of the Defendants, these results would not be possible. Instead, each undivided interest owner would be on an otherwise equal footing, as they were when Castor conveyed the undivided interest to his lawyers in 2016. But for the fraud and deceit practiced by the Defendants, the Transactional Documents would never have been executed and SHHB and Locke would merely have an undivided interest, being incentivized and obligated to incur and pay costs of development and to sell developed lots in order to receive further financial benefit of the property, or alternatively, being left with an action for partition which could not conceivably lead to consequences such as they have forced onto Plaintiffs through their scheme. In fact, in any partition suit, the very claims made here would be made and the fee would probably be determined as of 2016 and liquidated to a dollar amount-perhaps

$200,000.00, perhaps $700,000.00, perhaps 33% of Tracts A, B and C, that could be paid for with the proceeds of a loan on the entirety of the Recovered Property without Defendants' interference.

48.     In response, and on numerous occasions, Plaintiffs have offered seven-figure sums to secure a release of the Conditional Option so they may sell property and retire or refinance the existing loan secured by Tract A. They did so it the utmost good faith despite the Defendants' shape-shifting regarding fees and subsequent overreach by the Defendants. And every time, Defendants have refused, maliciously, even becoming abusive in their zeal to steal. They have also requested a release of liability from Plaintiffs as a condition of permitting him the use of the very property rights they were duty-bound to recover and to preserve but took from him through the most serious professional misconduct. Such a release could never be entered into unless Plaintiffs were represented by independent counsel under the provisions of Rule 1.08(g), Tex. Disc. R. Prof'l. Cond. True to form, Braugh inquired if Plaintiffs had counsel, were informed they did not at the time, and continued to request the release despite violation of Rule 1.08(g).

49.     Defendants have now forced Plaintiffs into a potential default upon the loan against Tract A, which matured on May 31, 2022, and into Chapter 11 bankruptcy to protect their interest in Tract A and future income from development of it. This bankruptcy case was necessary to avoid the exercise of the Conditional Option, and to reject and cancel it to avoid the forfeiture of all of the Recovered Property. Plaintiffs' credit has been destroyed along with his ability to receive the benefits that the SHHB was bound to secure for him.

50.     Presently, Tract A is valued at appraised at more than $7,000,000.00 "as-is." And presently, there is approximately $1,600,000.00 owed against Tract A. If the Defendants were to be able to exercise the option to purchase Tract A, worth $7,000,000.00 or more, for $1,600,000.00, they would net immediate equity of about $5,400,000.00, in addition to taking

all future development income that Plaintiffs could otherwise earn but for the self-dealing scheme, even while keeping Tracts B and C, worth $4,000,000.00, in the process. All of this, presently worth over $11,000,000.00 as-is and worth far more in the future, is what Defendants seek as compensation for a supposed "contingent fee" that was once liquidated at $200,000.00 by White, then $700,000.00 by Braugh himself, then as an undivided 33% interest in Tracts A, B and C. That is utterly unconscionable and no reasonable lawyer could form the opinion that it is otherwise.

51.     Because the Exchange Deeds and the Conditional Option were both acquired in plain violation of the disciplinary rules, they are illegal. Because they are illegal, they are void and unenforceable. No portion of the agreements in the Transactional Documents could possibly be enforced without violating the disciplinary rules, and therefore no portion is severable. Plaintiffs are entitled to judicial cancellation of the agreements in the Transactional Documents.

52.     The failures described above constitute "clear" and "serious" breaches of the disciplinary and fiduciary and other legal duties owed to Plaintiffs by Defendants. Defendants subjectively intended to prevent Plaintiffs from having the ability to borrow against, develop and sell portions of the Recovered Property in order to force Plaintiffs into a position where they forfeit their substantial property rights to Defendants and Defendants are unjustly enriched, warranting complete fee forfeiture and cancellation of the agreements in the Transactional Documents.

53.     The failures described above, being in the nature of concealment despite an affirmative duty of disclosure, constitute common law fraud, constructive fraud, and fraud in a real estate transaction in violation of Ch. 27, Tex. Bus. & Comm. Code. These acts of fraud resulted in substantial economic and general damages to Castor and warrant cancellation of the agreements in the Transactional Documents.

54.     The failures described above also constitute knowing, intentional breaches of the

fiduciary duties of loyalty and of full disclosure of all material facts, owed to Plaintiffs that have resulted in substantial economic and general damages. and the agreements in the Transactional Documents should be cancelled and forfeited.

55.     The failures described above also constitute tortious interference with prospective contracts necessary to borrow against, develop and sell portions of the Property in order to force Plaintiffs to forfeit the very property rights which Defendants were duty-bound to recover and preserve. As a result, Castor has sustained very substantial economic and general damages.

56.     The conduct described above constitutes securing the execution of a document by deception and misapplication of fiduciary property, and is actionable pursuant to the Texas Theft Liability Act, Ch. 134, Tex. Civ. Prac. & Rem. Code.

57.     The Defendants' conduct was specifically intended to prevent Castor from the ability to borrow against, develop and sell portions of the Property in order to force Plaintiffs into a position where he could receive no benefit and where Defendants could take control and complete ownership of the Recovered Property for a fraction of its actual value. By design, the agreements in the Transactional Documents destroyed the value of the settlement that the lawyers were duty-bound to secure, preserve, and fairly divide only as provided in a valid and enforceable contingent fee agreement. The scheme is intentional.  As a result, Plaintiffs have sustained very substantial economic and general damages and is entitled to declaratory relief to restore him to the position which he deserves, and to fee forfeiture.

## IV.  CLAIMS

### A.  COUNT 1:  BREACH OF FIDUCIARY DUTY

13.     Plaintiffs repeat and re-allege each of the allegations of the foregoing paragraphs as if they were fully set forth herein.

14.     Defendants' conduct constitutes breach of the fiduciary duties of full disclosure

and candor, and of loyalty and avoidance of conflicts of interest.

15.     Defendants' conduct involves self-dealing in fiduciary property belonging to the Plaintiffs.

16.     Defendants' conduct is the proximate cause of Plaintiffs' damages in excess of $10,000,000.00.

17.     Plaintiffs seek forfeiture of the entirety of any and all compensation received by the Defendants because of "clear" and "serious" breach of duties owed to Plaintiffs by their lawyers, the Defendants.

### B.  COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

18.     Plaintiffs repeat and re-allege each of the allegations of the foregoing paragraphs as if they were fully set forth herein.

19.     Defendants intentionally orchestrated a scheme of self-dealing without privilege or justification which was designed to prevent the Plaintiffs from having the ability to borrow against, sell portions of, or otherwise develop Tract A of the Recovered Property, and to prevent the Plaintiffs from having the benefit of the option to purchase Tracts B and C of the Recovered Property, as promised. Defendants' conduct in orchestrating the scheme is illegal and is fraudulent.

20.     Defendants' orchestrations have prevented Plaintiffs from refinancing the existing loan against Tract A, and from selling developed lots out of Tract A of the Recovered Property, worth more than $2,000,000.00.  Defendants' orchestrations have forced the Plaintiffs into default on the loan, for the sake of creating an opportunity to exercise an option to purchase property worth more than $7,000,000.00 for $1,600,000.00, while depriving the Plaintiffs of all development opportunities worth millions more, and while keeping ill-gotten gains worth more than $4,000,000.00.

21.     Defendants' conduct is the proximate cause of Plaintiffs' damages in excess of

$10,000,000.00.

### C.  COUNT III – COMMON LAW FRAUD & CONSTRUCTIVE FRAUD

22.     Plaintiffs repeat and re-allege each of the allegations of the foregoing paragraphs as if they were fully set forth herein.

23.     Each of the Defendants has committed common law fraud by misrepresentation and fraud by nondisclosure upon the Plaintiffs to their damage in excess of $10,000,000.00.

24.     SHHB falsely represented that the fee was $200,000.00, knowing that it would increase the fee to $700,000.00 or 33% of Tracts A, B, and C, and all the while intending to secure the agreements in the Transactional Documents that gave SHHB and Locke the ability to engage in their self-dealing scheme described above.

25.     Additionally or in the alternative, each of the Defendants has committed a constructive fraud upon the Plaintiffs by concealing the material facts they had an affirmative duty to disclose, namely, that they were not entitled to any fee beyond $200,000.00 given White's affirmative representation, that White was authorized to enter into that agreement, and that they were not entitled under any argument to more than an undivided interest in property that was clearly described in a valid contingent fee agreement. Non-disclosure by a fiduciary is tantamount to fraudulent concealment.

26.     The fraud, or alternatively constructive fraud, is the proximate cause of Plaintiff's damages in excess of $10,000,000.00.

### D.  COUNT IV– FRAUD IN A REAL ESTATE TRANSACTION

27.     Plaintiffs repeat and re-allege each of the allegations of the foregoing paragraphs as if they were fully set forth herein.

28.     The Defendants each committed fraud in a real estate transaction in violation of Ch., 27, Tex. Bus. & Comm. Code.

29.     SHHB made a false representation of fact when it represented and promised

through White that the fee was $200,000.00, while SHHB did not have any intention of honoring that representation or promise.  SHHB and Braugh then promised that the fee would be $700,000.00, then a 33% undivided interest in Tracts A, B, and C, intending all along to extract the agreements set forth in the Transactional Documents in lieu of honoring their representations and promises.

30.     Braugh joined in the false representations and promises of SHHB through White when he falsely represented to Castor that White did not have authority to agree to a $200,000.00 fee and when Braugh promised that he would accept a $700,000.00 fee, and then a deed for a 33% undivided interest in Tracts A, B, and C, even while intending to extract the agreements set forth in the Transactional Documents and to repudiate all of the prior "agreements" made concerning fees.

31.     DHW joined with Braugh in each of these false representations of fact and benefited by not disclosing the falsity of Braugh's representation or promises, even while communicating with Braugh and SHHB and drafting documents to "retrade" the prior "agreements" regarding fees.

32.     The false representations and promises were material and made with the intention of not fulfilling them, for the purpose of inducing the Plaintiffs to enter one or more contracts.

33.     The Plaintiffs relied on the false representations or promises by entering into the contracts, and the Plaintiffs' reliance caused them injury.

34.     Each of the Defendants was actually aware of the falsity of the representations and promises set forth above.

35.     SHHB and Locke actually benefited from one or more of the false representations and promises, and from their nondisclosure.

36.     All of the Defendants intended, or had reason to suspect, that the Plaintiffs

would enter into the contract(s) in reliance upon the false misrepresentations and promises and the nondisclosure of the falsity thereof.

37.     Plaintiffs have sustained actual damages in excess of $10,000,000.00, which is recoverable pursuant to §27.01(b), Tex. Bus. & Comm. Code.

38.     Pursuant to §27.01(c), Tex. Bus. & Comm. Code, Plaintiffs are entitled to the recovery of exemplary damages in the event that the trier of fact determines that a Defendant made a false representation or promise with actual awareness of its falsity.

39.     Pursuant to §27.01(d), Tex. Bus. & Comm. Code, Plaintiffs are entitled to recover exemplary damages in the event that the trier of fact determines that a Defendant had actual awareness of the falsity of the false representations and promises made by another, failed to disclose the falsity of the same and benefited from the false representations and promises

40.     Pursuant to §27.01(e), Tex. Bus. & Comm. Code, Plaintiffs are entitled to the recovery of their reasonable and necessary attorneys' fees, expert witness fees, costs for copies of depositions, and costs of court.

### E.  COUNT V – THEFT LIABILITY

41.     Plaintiffs repeat and re-allege each of the allegations of the foregoing paragraphs as if they were fully set forth herein.

42.     Defendants have unlawfully obtained property by "theft" as defined by §134.002(2), Tex. Civ. Prac. & Rem. Code.

43.     The "theft" committed by Defendants is actionable pursuant to §134.003(a), Tex. Civ. Prac. & Rem. Code.

44.     Pursuant to §134.005(a)(1), Tex. Civ. Prac. & Rem. Code, Plaintiffs are entitled to recover actual damages. Plaintiffs have sustained actual damages in excess of $10,000,000.00.

45.     Pursuant to §134.005(b), Tex. Civ. Prac. & Rem. Code, Plaintiffs are entitled to recover court costs and reasonable and necessary attorneys' fees.

## F.  COUNT VI-UNJUST ENRICHMENT

46.     Plaintiffs repeat and re-allege each of the allegations of the foregoing paragraphs as if they were fully set forth herein.

47.     The foregoing amply evidences that the Defendants' inequitable and illegal conduct has resulted in unjust enrichment at the expense of the beneficiary of the fiduciary relationship between them and the Plaintiffs, which in equity and good conscience shall be returned and forfeited.

## G.  COUNT VII – EXEMPLARY DAMAGES

48.     Plaintiffs repeat and re-allege each of the allegations of the foregoing paragraphs as if they were fully set forth herein.

49.     The conduct of the Defendants amounts to gross negligence and/or fraud and Plaintiffs seek exemplary damages up to twice the sum of economic damages. Further, the conduct of Defendants amounts to securing execution of a document by deception, theft and/or misapplication of fiduciary property, for which Plaintiff is entitled to recovery of unlimited exemplary damages.

## H.  COUNT VIII.  DECLARATORY RELIEF

50.     Plaintiffs repeat and realleges each of the allegations of the foregoing paragraphs as if they were fully set forth herein. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and based upon the allegations herein, Plaintiffs seek a declaratory judgment.

51.     In order to state a claim for declaratory relief under 28 U.S.C. § 2201, a party must provide sufficient facts to demonstrate: 1) a substantial controversy, 2) the controversy is between parties having adverse legal interests, and 3) the imminent and real

Original Complaint

nature of the controversy. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 989-60 (1969).

52.     In this action, a substantial controversy exists with respect to the declaratory relief Plaintiffs seek in that the Plaintiffs seek to establish that the Transactional Documents were acquired through conduct that is illegal, unconscionable, and fraudulent, and seeking declaration that they are void and unenforceable, and canceling them. The declaratory relief Plaintiffs seek is addressed to an imminent and real threat by Defendants and creates adverse legal interests by and between the Plaintiffs and Defendants with respect to the Transactions evidenced in the Transactional Documents.

53.     Plaintiffs request declaration that all agreements in the Transactional Documents are illegal, void and unenforceable.

54.     Plaintiffs request declaration that the Defendants' professional misconduct constitutes "clear," "serious" breaches of the disciplinary duties owed to Plaintiffs and warrants total fee forfeiture.

55.     Plaintiffs request declaration by the Court that the Plaintiffs shall have a constructive trust upon Tracts B and C out of the Recovered Property to secure their judgment.

56.     Plaintiffs request recovery of their reasonable and necessary attorney's fees and out-of-pocket expenses incurred in connection with the prosecution of this lawsuit.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court enter a judgment against Defendant as requested, for actual and exemplary damages, for declaratory relief, for a constructive trust upon property, for costs of court including reasonable and necessary attorneys' fees, for pre- and post-judgment interest, and for such other relief to which Plaintiffs are shown justly entitled to receive.

Dated: June 1, 2022.

Respectfully submitted by:

**CARL J. KOLB, P.C**.
501 Congress, Ste. 150
Austin, Texas 78701

926 Chulie Dr.
San Antonio, Texas 78216

Telephone: (737) 227-5573
Telecopy: (210) 225-2300
service@carlkolblaw.com

By:     */s/ Carl J. Kolb*
Carl J. Kolb
Texas Bar No. 11660480
S.D. Admission No. 29157

**COUNSEL FOR PLAINTIFFS**